UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MRS. JELLO, LLC, a New Jersey Limited Liability Company, | Case No. |
| Plaintiff, | |
| v. | **COMPLAINT AND JURY TRIAL DEMAND** |
| CAMILLA AUSTRALIA PTY LTD, an Australian corporation, | |
| Defendant. | |

Plaintiff, Mrs. Jello ("JELLO"), by its undersigned counsel Theodore Oshman, Esq. of OSHMAN & MIRISOLA, LLP does hereby in the Complaint against Defendant Camilla Australia Pty Ltd. ( "CA") state the following:

## SUMMARY OF ACTION

This is an action for a declaratory judgment, injunctive relief and damages arising under the trademark laws of the United States and the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1051 *et seq.* By this action, Plaintiff JELLO seeks review of its rights to a domain name <CAMILLA.COM> (the "Domain Name") under 15 U.S.C. § 1114(2)(D)(v) and a declaratory judgment that JELLO has legitimate interests in the Domain Name, that JELLO's ownership and use of the Domain Name does not violate any alleged rights asserted by Defendant CA, that JELLO is not required to transfer the Domain Name to CA, and that JELLO may use the Domain Name without restriction. JELLO also seeks damages, attorneys' fees, costs and injunctive relief for reverse domain name hijacking under 15 U.S.C. § 1117.

1

On or about September 7, 2015, CA filed an action against JELLO under the Uniform Dispute Resolution Procedure of the Internet Corporation for Assigned Names and Numbers (the "UDRP action") falsely claiming that JELLO registered the Domain Name in bad faith and seeking a forced transfer of the Domain Name to CA (Case Number D2015-1593). On November 30, 2015, the UDRP Panel (the "UDRP Panel") ordered the transfer of the Domain Name to CA.  JELLO is entitled to United States Federal Court review of its rights to the Domain Name under 15 U.S.C. § 1114(2)(D)(v) De Novo, as the Domain Name has been ordered transferred as a result of the UDRP action.

## PARTIES

1. Plaintiff, Mrs. Jello, LLC is a New Jersey limited liability company, with a primary address of 12 Chelsea Drive, Livingston, NJ 07039-3423.

2. On information and belief, Defendant, Camilla Australia Pty Ltd is an Australian corporation, with a principal place of business at 158A - 162 Crown Street, Darlinghurst NSW 2010, Australia.

## JURISDICTION AND VENUE

3. Subject matter jurisdiction of this Court is proper under 28 U.S.C. § 1331 (Federal Question), 15 U.S.C. §1121 and 28 U.S.C. § 1338 (Trademark Disputes), 15 U.S.C. §1114 (Anticybersquatting Act), 15 U.S.C. § 1116 (Injunctive Relief) and the Declaratory Judgment Act, 28 U.S.C. § 2201 and § 2202.

4. This Court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 by virtue of the diversity of the parties. The amount in controversy exceeds $75,000.

5. This Court has personal jurisdiction over CA, and venue is proper in the District of New Jersey, pursuant to its agreement as a party to the Uniform Domain Name Dispute Resolution Policy, which states that all parties agree to mutual jurisdiction in the principal office of the Registrar, which in this case is in New Jersey.[1]

**PERTINANT FACTS**

6. In May 2009, JELLO purchased the Domain Name at auction for $16,100 US in the ordinary course of JELLO's business.

7. JELLO is an operating company with significant revenue, over $40,000,000 in assets, and employees and vendors who provide it with search engine optimization and search engine marketing. The company owns hundreds of websites which provide content and information services, as well and hundreds of other URLs that are in development. JELLO earns revenue from all of these properties in varying amounts, including the Domain Name, which hosts pay-per-click ("PPC") links to vendors of various goods and services unrelated to CA's trademark or business. In a challenge similar to CA's herein, the UDRP Panel determined that JELLO is engaged in a

---

[1] Rules for Uniform Domain Name Dispute Resolution Policy (As Approved by ICANN on October 24, 1999):
**1. Definitions**
In these Rules: . . .
**Mutual Jurisdiction** means a court jurisdiction at the location of either (a) the principal office of the Registrar (provided the domain-name holder has submitted in its Registration Agreement to that jurisdiction for court adjudication of disputes concerning or arising from the use of the domain name) or (b) the domain-name holder's address as shown for the registration of the domain name in Registrar's Whois database at the time the complaint is submitted to the Provider.

legitimate business purpose in its use of generic words in generating revenue on a PPC basis.

8. JELLO made the investment in the Domain Name because "Camilla.com" is composed of a common name which is generic in nature, returning approximately 96,000,000 Google results and appearing as a name of countless businesses, celebrities, products, geographical locations, and the like. The name is also recognized the world over because of its association with British royalty, and generates many search inquiries for that reason. At the time the Domain Name was purchased it was being used as a site with adult content, but JELLO took down that site and re-launched it with marketing relating to women's products. JELLO is the senior user of the term Camilla in associations with marketing services for others.

9. CA, an Australian fashion company, registered its Australian trademark "Camilla" in 2013. It currently has a pending "intent to use" rather than "actual use" trademark registration in the United States which JELLO intends to contest.

10. JELLO had never heard of CA or its use of the name "Camilla" when JELLO purchased the Domain Name in 2009. In fact, CA did not even turn up in a search conducted on the name "Camilla". At that time CA had no US sales, unknown sales elsewhere, no trademarks anywhere in the world, and nothing that would alert JELLO to CA's existence. CA did not even do business in the United States, where JELLO operates, until years after JELLO acquired the Domain Name.

11. JELLO has never offered the Domain Name for sale, nor has JELLO ever contacted CA for this or any other purpose. In fact, JELLO only learned of CA's existence when CA contacted JELLO with an offer to purchase the Domain Name. The price

offered by CA, 50,000 Australian Dollars, was significantly below JELLO's initial and ongoing costs for the Domain Name including, without limitation, the proportionate share of employee salaries, workers compensation insurance, servers, server maintenance, parking costs with a third party vendor, software, accounting fees, legal fees and, of course, annual registration fees. JELLO rejected the offer and did not make a counteroffer, but merely advised CA that higher offers had been received and rejected. After this initial, unsolicited communication from CA, JELLO ceased responding to CA's emails. Thereafter, JELLO received a letter from CA's counsel demanding that JELLO sell the Domain Name, for a price lower than any of the other offers JELLO had received and rejected. JELLO did not respond, as it had no desire to sell the Domain Name.

12. CA's UDRP action represented nothing more than an attempt to obtain through legal proceedings what CA could not purchase from JELLO.

13. The Domain Name has been in continuous, unchanged and bona fide use by JELLO, generating significant revenue through advertising, since the Domain Name was acquired in 2009. It was neither registered in bad faith nor has it been used in bad faith. JELLO therefore has common law rights and other legitimate interests in the Domain Name superior to any claim of CA.

## COUNT I
## Declaration under the Anticybersquatting Consumer Protection Act & Declaratory Judgment

14. JELLO repeats and realleges Paragraph Nos. 1 through 13 of this Complaint as if fully set forth herein.

5

15. There is an actual, substantial, and continuing controversy between JELLO and CA regarding their respective rights in the Domain Name and consequently the enforceability of the UDRP Panel decision.

16. A justiciable issue exists between JELLO and CA as the Domain Name will be transferred to CA if JELLO does not contest the UDRP Panel decision in this Court.

17. JELLO asserts that its registration and use of the Domain Name is not unlawful because the Domain Name was obtained under a reasonable belief that the use of "Camilla", a common name, was fair and otherwise lawful, and without a bad faith intent to profit, as provided in 15 U.S.C. § 1125(d)(1)(A)(i), from CA's trademark "Camilla" for clothing.

18. CA's Camilla mark did not exist at the time Complainant registerd the domain name <Camilla.com> but was only registered, in Australia, four years later. Additionally, JELLO asserts that its registration and use of the Domain Name is not unlawful because CA's mark is generic and not distinctive, and was not famous (since it did not exist) at the time the Domain Name was registered. JELLO further asserts that its registration and use of the Domain Name is not unlawful because such use does not infringe or dilute any of CA's marks as provided in 15 U.S.C. § 1125(d)(1)(A)(ii) of CA's Australian mark.

19. JELLO asserts that its common law use of the term CAMILLA on Camilla.com makes it the senior user of the mark.

20. CA denies these contentions and maintains that it has superior rights in the Domain Name and that it may enforce the UDRP Panel decision.

21. JELLO and CA have existing rights or interests upon which this Court's judgment may effectively operate with the force and effect of a final judgment at law or decree in equity upon the legal relationships of the parties.

22. This proceeding is genuinely adversarial in character between JELLO and CA.

23. A declaration by the Court would terminate the controversy between JELLO and CA.

24. The parties need the Court to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations between them.

25. This substantial controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment, since the Domain Name will be transferred to CA in the absence of the declaration sought herein.  There is also a substantial likelihood that JELLO will suffer imminent and irreparable injury resulting from the enforcement of the UDRP Panel decision.

26. This Court has the power to declare the rights, status and other legal relations between the parties pursuant to 15 U.S.C. § 1114(2)(D)(v) and 28 U.S.C. §2201 *et seq*.

27. A judicial determination regarding JELLO's rights is necessary and appropriate, and JELLO therefore requests this Court to resolve the dispute by declaring that JELLO did not register and has not used the Domain Name in bad faith, that its actions do not constitute trademark infringement or dilution under United States law, or any other laws asserted by CA, that JELLO is not required to transfer the Domain Name to CA, and that JELLO may use the Domain Name without restriction.

## COUNT II

### Reverse Domain Name Hijacking Under the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1114(2)(D)(v)

28. JELLO repeats and realleges Paragraph Nos. 1 through 27 of this Complaint as if fully set forth herein.

29. Through passage of the Anticybersquatting Consumer Protection Act, Congress amended 15 U.S.C. § 1114 to establish a right of relief against an overreaching trademark owner seeking to take ownership of domain names that have not been registered or used in violation of the trademark owner's rights.[2] This practice is colloquially termed "reverse domain name hijacking." The Internet Corporation for Assigned Names and Numbers, the organization responsible for promulgating the UDRP, defines reverse domain name hijacking as "using the [Uniform Domain Name Dispute Resolution] Policy in bad faith to attempt to deprive a registered domain-name holder of a domain name."

30. On September 7, 2015, CA filed the UDRP action against JELLO alleging that JELLO had no rights or any legitimate interest in the Domain Name, falsely accusing JELLO of capitalizing on the goodwill associated with the CA trademark by driving traffic to its site, and demanding that the Domain Name be transferred to CA.

31. The UDRP Panel ruled that the Domain Name should be transferred to CA.

---

[2] Section 1114(2)(D)(v) states:

A domain name registrant whose domain name has been suspended, disabled, or transferred under [the UDRP] may, upon notice to the mark owner, file a civil action to establish that the registration or use of the domain name by such registrant is not unlawful under this Act. The court may grant injunctive relief to the domain name registrant, including the reactivation of the domain name or transfer of the domain name to the domain name registrant.

32. JELLO's registration and use of the Domain Name is not unlawful.

33. At the time JELLO obtained the Domain Name it was unaware of CA's business name and its Australian trademark "Camilla" – which was not registered until four years after JELLO acquired the Domain Name.

34. JELLO's Domain Name does not create the impression that the site is affiliated or associated with CA.

35. JELLO does not provide any of the goods or services provided by CA.

36. JELLO purchases domains but does not resell them and has no interest in selling the Domain Name to CA.

37. CA does not have the exclusive right to use the name "Camilla" as CA's mark is generic, not distinctive, and was not famous at the time the Domain Name was registered.

38. Unwilling to accept that JELLO was the rightful owner of the Domain Name and frustrated that JELLO refused to sell the Domain Name, CA initiated the UDRP action in an attempt to strong-arm JELLO into relinquishing its rights and legitimate interests in the Domain Name.  CA's actions constitute reverse domain name hijacking under 15 U.S.C. § 1114(2)(D)(v).

**WHERFORE**, Plaintiff JELLO demands judgment against Defendant CA as follows:

1. Declaring that JELLO did not register and has not used the CAMILLA.COM domain name in bad faith, that its actions do not constitute trademark infringement, trademark dilution or any other violation under United States law, that JELLO is not required to transfer the Domain Name to CA, and that JELLO may use the CAMILLA.COM domain name without restriction;

2. Declaring that JELLO is the senior user of the mark CAMILLA for providing advertising services for others and pay per click advertising.

3. Quashing and/or enjoining enforcement of the UDRP Panel's decision ordering the transfer of the CAMILLA.COM domain name to CA;

4. Enjoining CA, pursuant to 15 U.S.C. §1116, from using the CAMILLA.COM domain name now and in the future;

5. Awarding JELLO damages, pursuant to 15 U.S.C. §1117;

6. Awarding JELLO attorney's fees and costs, pursuant to 15 U.S.C. §1117; and

7. Granting such other and further relief as this Court deems just and proper.

Dated: _____, 2015

                                               Respectfully submitted,
                                               Mrs. Jello, LLC
                                               By Counsel

                                               Theodore Oshman_____
                                               Theodore Oshman, Esq. (ID: TO0136)

                                               s/ Jason L. Pullman_____
                                               Jason L. Pullman (ID: JP1946)
                                               **OSHMAN & MIRISOLA, LLP**
                                               42 Broadway, 10lh floor
                                               New York, NY 10004-1617
                                               Tel: (212) 233-2100

## **REQUEST FOR A JURY TRIAL**

Plaintiff requests a jury trial on all issues triable by a jury.

                                               Respectfully submitted,
                                               Mrs. Jello, LLC
                                               By Counsel

                                               Theodore Oshman_____


Theodore Oshman, Esq. (ID: TO0136)

s/ Jason L. Pullman
Jason L. Pullman (ID: JP1946)
**OSHMAN & MIRISOLA, LLP**
42 Broadway, 10lh floor
New York, NY 10004-1617
Tel: (212) 233-2100

## CERTIFICATION PURSUANT TO LOCAL RULE 11.2

The undersigned counsel for Plaintiff Mrs. Jello, LLC certifies that the matter in controversy is not the subject of any other action pending in any Court, or of a pending arbitration or administrative proceeding.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

                                              Theodore Oshman_____
                                              Theodore Oshman, Esq. (ID: TO0136)

                                              s/ Jason L. Pullman_____
                                              Jason L. Pullman (ID: JP1946)
                                              **OSHMAN & MIRISOLA, LLP**
                                              42 Broadway, 10lh floor
                                              New York, NY 10004-1617
                                              Tel: (212) 233-2100

Dated: December 18, 2015